UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSE NEWTON | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:17-cr-00048-JAW-1 |
| | ) | 1:21-cv-00263-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 94.) Following a guilty plea, Petitioner was convicted of possessing a firearm after having been convicted of an offense punishable by more than one year in prison; the Court sentenced Petitioner to 120 months in prison. (Judgment, ECF No. 62.) Because Petitioner was on supervised release at the time of the offense due to a prior conviction, the Court also revoked Petitioner's supervised release and imposed a consecutive sentence of twenty-four months in prison. (*Id.*; Revocation Judgment, 1:13-cr-00073-JAW-1, ECF No. 88.) The First Circuit affirmed. *United States v. Newton*, 972 F.3d 18 (1st Cir. 2020).

Petitioner claims his guilty plea was involuntary and his counsel provided ineffective assistance. The Government requests dismissal. (Response, ECF No. 107.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2013, Petitioner pled guilty to possessing ammunition after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). (Guilty Plea, 1:13-cr-00073-JAW-1, ECF No. 16.) In October 2013, the Court sentenced Petitioner to twenty-four months in prison to be followed by three years of supervised release. (Amended Judgment, 1:13-cr-00073-JAW-1, ECF No. 19.)

In January 2016, while Petitioner was on supervised release, the Office of Probation and Pretrial Services received reports from two police officers that an employee of a variety store in Waldo, Maine told them that Petitioner was frequenting the store intoxicated and threatening to kill the officers. (Presentence Investigation Report (PSR) ¶ 5.) On July 1, 2016, one of the officers reported that a witness heard gunshots near Petitioner's house and that he knew Petitioner fired guns in his back yard. (*Id.*) The officer also claimed that Petitioner had "stared" him down at the store on July 4, 2016. (*Id.*) On that same date, someone either threw a bottle or detonated an explosive, likely a commercial firecracker, in a glass bottle on the front porch of a house belonging to one of the two officers. (*Id.* ¶ 4.)

The Probation Office sought permission to search Petitioner's home pursuant to the conditions of his supervised release, and on July 13, 2016, authorities seized two cellphones, two boxes of fired shell casings, a game camera, two rifle stocks for an SKS assault rifle, and forty-six marijuana plants spread across three growing locations on the property. (PSR ¶ 6.) Authorities also found a tree damaged by bullet impacts. (*Id.*)

2

Subsequently, another individual informed authorities that Defendant kept a handgun hidden in a heating duct in his home. (*Id.*) Probation officers and local police officers performed another search on July 15, 2016, and they found the weapon. (*Id.*) The gun was later determined to have been manufactured in Connecticut, and the gun had DNA consistent with Petitioner's DNA. (*Id.* ¶ 7.)

Although Petitioner's mother asserted that she owned the handgun and had fired it at the tree, five other witnesses provided further information about Petitioner handling and firing the seized firearm and other firearms on various occasions while he was on supervised release. (*Id.* ¶¶ 8–10.) After obtaining a warrant to search Petitioner's mobile phone, the Government located photographs depicting Petitioner among the marijuana plants while holding the gun pointed at the camera. (*Id.* ¶ 11.)

Petitioner was arrested after the search on July 13, 2016, and held in state custody until December 2016, at which time he was transferred into federal custody on the petition to revoke his supervised release. (PSR ¶ 1.) In July 2017, the Government charged Petitioner with possessing a firearm after having been convicted of a crime punishable by more than one year in prison in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Waiver of Indictment, ECF No. 1; Information, ECF No. 2.) Petitioner pled guilty to the offense, and the Court determined that he had committed the supervised release violations. (Guilty Plea, ECF No. 5; Judgment, 1:13-cr-73, ECF No. 88.)

There were multiple contested issues at sentencing. The Court determined the Government had presented sufficient evidence to conclude: (1) Petitioner possessed eight firearms, which increased the offense level four points pursuant to U.S.S.G. §

3

2K2.1(b)(1)(B); (2) Petitioner possessed a firearm in connection with another felony offense, the cultivation of marijuana, which increased the offense level four points under U.S.S.G. § K2.1(B)(6)(B); and (3) Petitioner obstructed justice for purposes of U.S.S.G. § 3C1.1 by threatening a witness, which increased his offense level two points, and had not accepted responsibility for purposes of the U.S.S.G. § 3E1.1 reduction. (Sentencing Transcript Vol. I at 71, 145, ECF No. 70); Sentencing Transcript Vol. II at 19–21, 33, ECF No. 69.)  The Court also concluded that Petitioner had successfully argued that (1) the law enforcement officers were not official victims within the meaning of the U.S.S.G. § A1.2(c)(1) enhancement; and (2) while it was more likely than not that Petitioner was the individual responsible for the incident on the officer's front porch, the Government failed to establish that Petitioner had used an explosive device for purposes of the USSG § 2K2.1(b)(3)(B) enhancement.  (Sentencing Transcript Vol. I at 179, 185; Sentencing Transcript Vol. II at 32–33.)

    The Court found an offense level of thirty-two and a criminal history category of VI.  (Sentencing Transcript Vol. II at 33.)  The corresponding guideline range was 210 to 262 months.  (*Id.*)  Because the statutory maximum was ten years, the guideline sentence was reduced to 120 months pursuant to U.S.S.G. § 5G1.1(a).  (*Id.*)  The guideline range for the supervised release violations was twenty-four months to be served consecutively.  (*Id.* at 31, 33).  The Court sentenced Petitioner to 120 months in prison for the conviction and twenty-four months to be served consecutively for the supervised release violations.  (Judgment, ECF No. 62; Revocation Judgment, 1:13-cr-00073-JAW-1, ECF No. 88.)

Petitioner filed an appeal challenging the Court's sentencing finding that he had possessed a firearm in connection with marijuana cultivation. *United States v. Newton*, 972 F.3d 18, 20 (1st Cir. 2020). The First Circuit rejected that argument and affirmed the sentence. *Id.* Petitioner then filed the § 2255 motion. (Motion, ECF No. 94.)

## DISCUSSION

### A.   Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or

6

on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

7

B.  **Prosecutorial Misconduct Claim**

Petitioner claims the Government acted in bad faith when it secured his guilty plea without a plea agreement, and that his attorney was ineffective for failing to raise the issue with the Court. (Motion at 5, 14–15, 24–28.) According to Petitioner, the Government orally agreed not to pursue the sentencing enhancements and to recommend a sentence of sixty to seventy-two months and then reneged on the agreement at sentencing. (*Id.*)

A review of the record establishes that Petitioner's assertions are not plausible. Petitioner's own exhibits, which contain communications to him from his attorney, suggest that at the time of the plea, "the prosecutor did not indicate the Government would be looking for those enhancements," and that the prosecutor at most stated an informal expectation that he "did not believe the numerous enhancements would apply," but according to defense counsel, the comments regarding the expected guideline issues were "not part of a plea agreement or offer." (Attachments, ECF Nos. 94-3, 94-6.) Petitioner's allegations are also contrary to his sworn statements at the plea hearing, where he asserted there were no plea offers or agreements, and Petitioner never raised the issue or sought to withdraw his plea after the Government pursued the enhancements.

Because the record lacks evidence to support the existence of another, more favorable plea agreement, either written or oral, Petitioner's assertions cannot and do not establish that his attorney performed deficiently or that his plea was less than voluntary.

C.  ***Brady* Claim**

Petitioner argues the Government withheld certain evidence in violation of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a category that

includes impeachment evidence of key government witnesses, *Giglio v. United States*, 405 U.S. 150, 154 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Petitioner faults the Government for failing to disclose prior to his guilty plea the identity and expected testimony of the witnesses eventually called at sentencing. (Motion at 24–28.) The argument lacks merit because Petitioner has not produced or described with particularity any exculpatory evidence that was allegedly withheld. At sentencing, the witnesses provided incriminatory evidence, not exculpatory evidence. Even if Petitioner's argument can be construed to suggest that the information was favorable to him because it might have been used to impeach a confidential informant's testimony, because Petitioner decided to plead guilty and not go to trial, the Government had limited, if any, disclosure obligations. *See United States v. Ruiz*, 536 U.S. 622, 628, 633 (2002) (holding that because *Brady* and its progeny describe a constitutional right created "as part of its basic 'fair trial' guarantee," and because a guilty plea waives several constitutional rights including a defendant's right to a fair trial, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant"). Petitioner has not established any of the elements of a *Brady* violation. Accordingly, Petitioner's claim fails.

### D.      Ineffective Assistance at the Plea Stage and Sentencing

####    1.      Failure to Move to Suppress Evidence

Petitioner asserts his attorney provided ineffective assistance by failing to file a motion to suppress the evidence collected during the July 15, 2016, search for the firearm in the heating duct, which search Petitioner contends was unreasonable in violation of his Fourth Amendment rights. (Motion at 7–8, 14, 21–24.) Because Petitioner had been arrested two days earlier, the Government does not dispute Petitioner's arguments that the search could not be justified based on the arrest warrant for Petitioner or as a search incident to arrest. The Government maintains that both searches of the residence were lawful even without search warrants because the conditions of Petitioner's supervised release specified that he must "at all times readily submit to a search of his residence . . . upon the officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence of violation of the terms of supervised release." (Amended Judgment at 4, 1:13-cr-00073-JAW-1, ECF No. 19.)

Petitioner alleges that the witness who provided the information about the location of the firearm lied to the authorities and had hidden the firearm in that location to set up Petitioner because Petitioner had a romantic relationship with the witness's romantic partner. The credibility issues regarding the witness might have been relevant had the matter gone to trial. At the time of the tip to the authorities, however, the tip was not the only evidence known to the police and Probation Office. Authorities had other information (i.e., the information obtained during the July 13, 2016, search), which together with the tip, was more than sufficient to establish reasonable suspicion that another search might

10

produce evidence of a violation. Petitioner also does not contend that he or his mother refused to give the authorities permission to conduct the second search pursuant to the conditions of supervised release.

Furthermore, even if the Court were to conclude that upon Petitioner's arrest, a warrant was required to search Petitioner's home a second time, Petitioner would not be entitled to relief. Petitioner has failed to present any persuasive evidence or argument to suggest that he would not have pled guilty had authorities not found the firearm on July 16. The other evidence, which included shell casings, a rifle stock, incriminating photographs, and multiple eyewitness accounts of Petitioner's possession and use of firearms, overwhelmingly pointed to Petitioner's guilt. Given that the guideline range far exceeded the statutory maximum penalty, Petitioner has not established a likelihood that the absence of the firearm would have resulted in a lesser sentence. Under the circumstances, counsel did not perform deficiently by not filing a motion to suppress.

Petitioner also asserts that his attorney provided ineffective assistance by failing to challenge the warrant to search the contents of his mobile phone, which search was conducted in accordance with a warrant. (Motion at 7, 21–24.) Because Petitioner has not identified any false statements in the warrant affidavit, he has not established a sufficient likelihood that defense counsel would have been able to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" or that any such "false statement [was] necessary to the finding of probable cause . . . ." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Because Petitioner has not shown that he would have been

11

successful in challenging the warrant, or that he would have even been entitled to a hearing on the issue, counsel cannot be faulted for declining to pursue the issue.[1]

Petitioner thus has not established that he was provided ineffective assistance before he pled guilty.

### 2. Sentence Estimate

Petitioner argues that counsel was ineffective because he did not accurately estimate the guideline range ultimately determined by the Court. (Motion at 27.) Counsel and the Court informed Petitioner of the maximum sentence he faced if he pled guilty. A defendant's lawyer "is entitled to offer to a client pondering a plea counsel's reasonable best guess as to a likely sentence," *Forsyth v. Spencer*, 595 F.3d 81, 86 (1st Cir. 2010), and "an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1994). Counsel's estimate of a sentence around the six-year range was considerably lower than the ten-year sentence imposed, but the estimate was not so unreasonable as to imply deficient performance. It is unclear whether the estimate

---

[1] Petitioner's argument about the interstate nexus of the firearm fails for similar reasons. The affidavit states that the firearm was manufactured in a different state than the one in which it was found, which implied that the firearm had traveled in interstate commerce at some point before the seizure. There was no assertion that it was Petitioner who moved the firearm across state lines, since that is not necessary to establish a § 922(g) violation. *See e.g., United States v. Bass*, 404 U.S. 336, 350 (1971) (explaining that the interstate commerce nexus requirements can be met not only "if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce" but also if "the firearm received has previously traveled in interstate commerce").

preceded the guilty plea or merely came before sentencing, which bears on the question of prejudice. Even assuming Petitioner relied on the estimate in deciding whether to plead guilty, several of the key facts that led to the significant enhancements and loss of guideline reductions were known to Petitioner but were likely unknown to counsel, such as the witness tampering and the photographs later discovered on his cell phone. Petitioner is not entitled to relief based on counsel's estimate of the sentence range.

### 3. Inadequate Preparation or Investigation

Petitioner contends his counsel was ineffective because his attorney did not understand the elements of the offense, failed to review discovery, failed to conduct legal research, failed to interview potential fact witnesses, and failed to obtain expert witnesses. (Motion at 4, 18–21, 27.) Petitioner provides no corroborating evidence and does not otherwise cite the bases for his contentions regarding his attorney's efforts. In addition, the hearing transcripts, which reflect counsel's objections, arguments, and questioning refute Petitioner's argument that counsel failed to prepare. The claim also fails because Petitioner has not identified any meaningful evidence or meritorious arguments that would have been revealed had counsel made additional investigative efforts. Without any explanation of how additional investigation would have uncovered material evidence, Petitioner cannot establish substandard performance or prejudice. *See Cepulonis v. Ponte*, 699 F.2d 573, 575 (1st Cir. 1983) ("counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics"); *Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010)

("Where, as here, the result of counsel's alleged failure to investigate is wholly speculative, *Strickland*'s prejudice prong is not satisfied").

### E.     Ineffective Assistance on Appeal

Petitioner claims that he received ineffective assistance because his appellate counsel only contested one of the guideline enhancements and did not raise the other disputed sentencing issues or the oral plea agreement issue.  (Motion at 5, 27–28.) Petitioner relies on his trial attorney's alleged statement that he intended to challenge on appeal all the enhancements to which he objected at sentencing, but Petitioner's appellate counsel chose not to do so.  That argument cannot support postconviction relief, however, because "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (discussing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Petitioner provides no authority to suggest that a statement of intent from trial counsel is binding on appellate counsel or that a prior statement of intent can render a later course change objectively unreasonable.

Because Petitioner has not shown the Court committed any error regarding the guideline enhancements or issues regarding the searches and guilty plea, Petitioner has not shown that appellate counsel performed deficiently by failing to present the issues to the First Circuit or that Petitioner was prejudiced by appellate counsel's decisions.[2]

---

[2] To the extent that Petitioner's filings can be construed to raise other arguments not addressed at length in this recommended decision, such as his alleged actual innocence of the offense of conviction, the arguments have no merit and do not entitle him to relief.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 31st day of January, 2023.